## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 10 2016, 7:54 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

John Andrew Goodridge
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jacob Aaron Phillips,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 10, 2016

Court of Appeals Case No.
82A01-1504-PC-287

Appeal from the
Vanderburgh Superior Court

The Honorable
Robert J. Pigman, Judge

Trial Court Cause No.
82D03-1312-PC-13

**Kirsch, Judge.**

[1]     Jacob Aaron Phillips ("Phillips") appeals the post-conviction court's denial of his petition for post-conviction relief. On appeal, he raises the followed restated

issue: whether he received ineffective assistance of trial counsel when pleading guilty.

[2] We affirm.

## Facts and Procedural History

[3] In April 1999, Phillips married K.P. ("Mother"). They have four children together.[1] At the time that they married, Mother also had a daughter, B.L., born in or around 1993.[2] Near the end of April 2010, the child protective services ("CPS") telephone hotline received a call from an individual who shared with CPS that she had learned from B.L., who was then seventeen years old, that B.L.'s stepfather, Phillips, had "messed with" B.L. and that Phillips had been having sex with B.L. since she was in the fourth grade. *Pet'r's Ex*. A. Authorities thereafter interviewed B.L., who described how Phillips had touched her inappropriately, including "fingering" her, having vaginal intercourse with her, having anal intercourse with her, performing oral sex on her, and requiring her to perform oral sex on him. *Id*. On one or more occasions, Mother was aware of Phillips's conduct; B.L. told police about one

---

[1] The presentence investigation report indicates that Phillips has no children. However, at the sentencing hearing, Phillips's counsel clarified that Phillips and Mother have four children together, explaining that Phillips told the presentence investigator that he had no children because, by that point, his parental rights had been terminated.

[2] Some portions of the record and the State refer to the victim as B.F. *See Appellee's Br*. at 1 and *Pet'r's Ex*. A. However, Phillips's Brief and other portions of the record, including the sentencing hearing at which the victim testified, refer to her as B.L., and we will refer to her as such in our decision. There is no dispute that B.F. and B.L. are the same person.

occasion when Phillips penetrated her vagina with his penis while Mother was in the same bed and kissing Phillips.

[4] Phillips gave a confession to police regarding activities involving B.L. over the course of nine years, July 1999 to December 2008, in three counties. Phillips admitted to: touching B.L.'s vagina; having vaginal and anal intercourse with her; performing oral sex on B.L.; and receiving oral sex from her. He acknowledged to having sexual relations with B.L. "regularly," meaning at least once or twice a week, beginning in 2007. *Id*. Police also interviewed Mother, who initially denied knowledge of anything having occurred between Phillips and B.L., but later admitted to being aware of some of the conduct and having seen Phillips have sexual intercourse with B.L. Charges were filed against Phillips in three counties: Vanderburgh County, Warrick County, and Posey County.

[5] As is relevant here, in April 2010, the State charged Phillips in the Vanderburgh Superior Court with having committed five offenses: Count I, Class A felony child molesting by sexual deviate conduct by digitally penetrating the vagina of B.L., a child under fourteen years; Count II, Class A felony child molesting by sexual deviate conduct by anal sex with B.L.; Count III, Class A felony child molesting by sexual deviate conduct by oral sex with B.L.; Count IV, Class B felony sexual misconduct with a minor by sexual intercourse with B.L.; and Count V, Class B felony sexual misconduct with a minor by sexual intercourse with B.L. On May 20, 2010, Attorney David Lamont ("Lamont") filed an appearance to represent Phillips.

In August 2012, Phillips pleaded guilty to Counts III, IV, and V, in exchange for the State's agreement to dismiss Counts I and II, each a Class A felony. The plea agreement ("the Agreement") provided, "Court to determine an appropriate sentence, with both sides reserving the right to argue." *Pet'r's Ex.* B. The Agreement, at paragraph 17 ("Paragraph 17") contained the following provisions:

> The Defendant agrees that he/she was fully advised of and knowingly, intelligently, and voluntarily waived the right to challenge the 'reasonableness' of the Court's sentence under mitigating circumstances, and waived the right to challenge the weighing of the aggravating and mitigating circumstances. It is further agreed that the sentence recommended and/or imposed is the appropriate sentence to be served pursuant to this agreement and that Defendant hereby waives any further request to modify this sentence under I.C. § 35-38-1-17.

*Id.* Above his signature, Phillips also agreed:

> I further understand that I have the right to challenge the "reasonableness" of the Court's sentence under Appellate Rule 7(B) and I hereby waive that right and waive the right to challenge the Court's weighing of aggravating and mitigating circumstances.

*Id.*[3]

---

[3] Our Supreme Court has determined, "[A] defendant may waive the right to appellate review of his sentence as part of a written plea agreement. This holding does not affect our very long-standing policy that a defendant who can establish in a post-conviction proceeding that his plea was coerced or unintelligent is entitled to have his conviction set aside." *Creech v. State*, 887 N.E.2d 73, 75 (Ind. 2008).

[7]    In October 2012, the trial court held a sentencing hearing. B.L. testified that during the period of time specified in the charges, she was abused by Phillips "at the very least, three times a week." *Sent. Tr.* at 8. B.L. was nineteen years old at the time of the sentencing hearing, and she stated that Phillips began sexually abusing her when she was seven years old. The trial court found that the aggravating factors outweighed the mitigating factors, and it sentenced Phillips to the advisory sentence on each of the three counts: Count III, Class A felony child molesting, thirty years; County IV, Class B felony sexual misconduct with a minor, ten years; and Count V, Class B felony sexual misconduct with a minor, ten years. *See* Ind. Code §§ 35-50-2-4, -5. The trial court ordered that the sentences be served consecutive to each other, for an aggregate sentence of fifty years. The trial court ordered that the fifty-year sentence be served consecutive to a thirty-five year sentence that had been imposed days before in Warrick County upon Phillips's plea of guilty to one count of Class A felony child molesting (also involving B.L.).[4] After the trial court had advised Phillips of certain rights and as the hearing was concluding, Lamont stated:

> Judge, I believe that he would like to appeal the decision and he has no funds to pay for an attorney to do that appeal, and I would also . . . I think this will become an issue, but I'd like for the record to reflect that I was ineffective as his counsel on

---

[4] Phillips also subsequently pleaded guilty in Posey County to three Class B felony charges of sexual misconduct with a minor, involving the same victim, and Phillips received three fifteen-year sentences to run concurrent to each other. *Pet'r's Ex.* F. The Posey County trial court ordered the fifteen-year executed sentence to run consecutive to the sentences imposed in Vanderburgh County and Warrick County. *Id.*

advising him as to the consequences of certain waivers that are contained within his plea agreement.

*Sent. Tr.* at 21. The trial court asked Lamont to specify to what waiver he was referring, and Lamont explained that he was "ineffective" in advising Phillips about Paragraph 17 of the Agreement, concerning his right to challenge the trial court's sentencing decision. *Id.* at 21-22.

[8] In November 2012, Phillips filed a motion to correct error asserting that he had received ineffective assistance of counsel as to appellate waiver, which motion the trial court denied. In November 2013, Phillips filed a petition for post-conviction relief, asserting that he was denied effective assistance of trial counsel because his counsel had failed to advise him about the appellate waiver aspects of his plea and that Phillips "unknowingly lost his right to appeal the reasonableness of his sentence." *Appellant's App.* at 29.

[9] In January 2015, the post-conviction court held a hearing on Phillips's petition. At the hearing, attorney Lamont testified that he had performed deficiently by "failing to properly advise Mr. Phillips of the consequences of the waivers . . . in Paragraph 17," concerning his right to appeal the sentence. *PCR Tr.* at 33. On April 21, 2015, the post-conviction court issued its findings and conclusions denying Phillips's petition for post-conviction relief. It determined that Phillips did not identify any facts "that establish an objectively reasonable probability that competent representation would have changed his decision to enter a guilty plea." *Appellant's App.* at 87. The post-conviction court continued,

> Nor can the Defendant show that an appeal of his sentence would have been successful. Petitioner does not even make an attempt to do so. Even if he had[,] such attempt would have been futile. A review of some of the most recent appellate decisions wherein the issue of the appropriateness of a [d]efendant's sentence for child molesting has been considered establishes the sentence handed down in this cause is well within the parameters of what is considered appropriate given the nature and circumstances of this case.
>
> . . . .
>
> There is no showing that taken as a whole Attorney Lamont's representation of Petitioner was inadequate . . . and Petitioner has failed to establish that he suffered any prejudice from any erroneous advice he may have received. Therefore, the Petition for Post-Conviction Relief is denied.

*Id*. at 88. Phillips now appeals.

# Discussion and Decision

Post-conviction proceedings are not "super appeals" through which a convicted person can raise issues that he did not raise at trial or on direct appeal. *Timberlake v. State,* 753 N.E.2d 591, 597 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002); *Hinesley v. State*, 999 N.E.2d 975, 981 (Ind. Ct. App. 2013) (quoting *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013)), *trans. denied*. Instead, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Hinesley*, 999 N.E.2d at 981. Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the

evidence. Ind. Post-Conviction Rule 1(5); *Garcia v. State*, 936 N.E.2d 361, 363 (Ind. Ct. App. 2010), *trans. denied*.

[11] A petitioner appealing from the denial of post-conviction relief stands in the position of one appealing from a negative judgment. *Id.* A petitioner who appeals the denial of post-conviction relief faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. *McCullough v. State*, 973 N.E.2d 62, 74 (Ind. Ct. App. 2012) (citing *Shepherd v. State*, 924 N.E.2d 1274, 1280 (Ind. Ct. App. 2010), *trans. denied*), *trans. denied*. The defendant must establish that the evidence, as a whole, unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Hinesley*, 999 N.E.3d at 981; *Garcia*, 936 N.E.2d at 363. "'In other words, the defendant must convince this Court that there is *no* way within the law that the court below could have reached the decision it did.'" *Wilkes*, 984 N.E.2d at 1240 (quoting *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002), *cert. denied*, 540 U.S. 830 (2003)) (emphasis in original).

[12] Phillips claims that the post-conviction court erred by concluding that he received effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that he was prejudiced thereby. *Wilkes*, 984 N.E.2d at 1240 (citing *Strickland v. Washington,* 466 U.S. 668 (1984)). This standard first asks whether, considering all the circumstances, counsel's actions

were "reasonable[ ] under prevailing professional norms." *Id*. As our Supreme Court has explained,

> Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.

*Timberlake*, 753 N.E.2d at 603 (citations and quotations omitted).

[13] Even if counsel's performance is deficient, the defendant must also demonstrate that counsel's performance actually prejudiced the defense. *Wilkes*, 984 N.E.2d at 1241. "'To establish the requisite prejudice, a petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *McCullough*, 973 N.E.2d at 74-75. Our Supreme Court has stated that a "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Smith v. State,* 765 N.E.2d 578, 585 (Ind. 2002); *Carrillo v. State*, 982 N.E.2d 468, 472 (Ind. Ct. App. 2013). The two elements of *Strickland* are separate and independent inquiries. Failure to satisfy either prong will cause the claim to fail, but most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *McCullough*, 973 N.E.2d at 75; *see also Taylor v. State,* 840 N.E.2d 324, 331 (Ind. 2006) (failure to

satisfy either component will cause ineffective assistance of counsel claim to fail).

[14]    In asserting that he received ineffective assistance of counsel, Phillips refers us to Lamont's statement at the conclusion of the sentencing hearing, where Lamont told the trial court, "I was ineffective as his counsel on advising him as to the consequences of certain waivers that are contained within his plea agreement." *Sent. Tr.* at 21. At the post-conviction hearing, Phillips presented Lamont as a witness. Lamont testified that he was an experienced attorney, having practiced for twenty-five years, primarily in the area of criminal defense. Phillips's attorney asked Lamont why he had made "a comment of self-criticism" with regard to the appellate waiver contained in Paragraph 17 of the Agreement. *PCR Tr.* at 33. Lamont explained,

> [T]his was a time period for the first time since I've been practicing law that they started putting this paragraph in plea agreements, and I had advised Mr. Phillips that he could not appeal the plea of guilty, but he could appeal the sentence.

*Id.* at 33-34.[5] Because the Agreement provided that Phillips was waiving his right to challenge the trial court's sentencing decision, Lamont believed that it

---

[5] Lamont noted, "I checked recently and the new paragraph 17 in plea agreements is much stronger and, in fact, the information that I forgot to tell Mr. Phillips is now in bold letters for both the person accused and the attorney representing him." *PCR Tr.* at 35-36.

was appropriate for him to tell the trial court that his advisement to Phillips was "deficient." *Id*. at 35.

[15] Assuming without deciding that Lamont's representation of Phillips was deficient, Phillips has failed to show, or even allege, that he was prejudiced by Lamont's performance. On appeal, Phillips only contends that he "was prejudiced because the Defendant unknowingly waived his right to appeal the severe sentence imposed by the trial court." *Appellant's Br*. at 11. Beyond that statement, however, Phillips does not argue, establish, or explain in what way he was prejudiced. To that extent, his claim is waived. Ind. Appellate Rule 46(A)(8)(a); *Jervis v. State*, 28 N.E.3d 361, 368 (Ind. Ct. App. 2015) (defendant waived argument by failing to present cogent argument on issue), *trans. denied*.

[16] Regardless of waiver, we find no error. Here, because Phillips was convicted pursuant to a guilty plea, we analyze his claim under *Segura v. State,* 749 N.E.2d 496 (Ind. 2001). *Smith v. State*, 770 N.E.2d 290, 295 (Ind. 2002); *Clarke v. State*, 974 N.E.2d 562, 565 (Ind. Ct. App. 2012). *Segura* categorizes two main types of ineffective assistance of counsel cases: failure to advise the defendant on an issue that impairs or overlooks a defense, and an incorrect advisement of penal consequences. *Smith,* 770 N.E.2d at 295. Phillips's claim – that his trial counsel was ineffective for failing to advise him about the appellate waiver contained in Paragraph 17 of the Agreement, concerning waiver of his right to contest the sentence – implicates the second of the two *Segura* categories.

[17] With respect to a claim that a defendant has received incorrect advice as to penal consequences of a plea, the *Segura* Court stated:

> Whether viewed as ineffective assistance of counsel or an involuntary plea, the post-conviction court must resolve the factual issue of the materiality of the bad advice in the decision to plead, and post-conviction relief may be granted if the plea can be shown to have been influenced by counsel's error. However, if the post-conviction court finds that the petitioner would have pleaded guilty even if competently advised as to the penal consequences, the error in advice is immaterial to the decision to plead and there is no prejudice.

*Roberts v. State*, 953 N.E.2d 559, 563 (Ind. Ct. App. 2011) (quoting *Segura*, 749 N.E.2d at 504-05), *trans. denied*.

[18] In accordance with the *Segura* Court's directive, the post-conviction court considered the materiality of Lamont's failure to properly advise Phillips and whether the error influenced Phillips's decision to plead guilty. The post-conviction court observed,

> Merely alleging that the petitioner would not have pleaded is insufficient. Rather, specific facts, in addition to the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea.

*Appellant's App.* at 87 (quoting *Segura*, 749 N.E.2d at 507). The post-conviction court considered that, based on recent appellate decisions, "the sentence handed down in this cause is well within the parameters of what is considered appropriate given the nature and circumstances of this offense[,]"and thus any

appeal of his sentence on the basis that it was inappropriate would not have been successful. *Id*. at 88. The post-conviction court also noted that the Agreement allowed Phillips to avoid facing convictions and sentences for two additional Class A felonies, and it concluded that Phillips failed to establish an objectively reasonable probability that, but for Lamont's failure to advise, he would not have entered the plea. We agree.

[19] Phillips did not testify that he would have insisted on going to trial if Lamont had told him that he was waiving his right to challenge the appropriateness or reasonableness of his sentence. Even if Phillips had made that assertion, he would have needed to provide "specific facts" that "establish an objective reasonable probability that competent representation would have caused [him] not to enter a plea." *Segura*, 749 N.E.2d at 507. Phillips presented no such specific facts, nor does the record suggest any. Indeed, Phillips had given a "complete confession" to authorities regarding his conduct with B.L. that resulted in a total of ten charges being filed against him in three counties, five alleging Class A felony child molesting and five alleging Class B felony sexual misconduct with a minor. *Sent. Tr*. at 4; *Pet'r's Exs*. A, E, F. In addition, Mother and B.L. gave statements to police that were not inconsistent with Phillips's admissions. Pursuant to the Agreement, the State offered to dismiss two Class A felonies in exchange for Phillips's agreement to plead guilty to one Class A felony and two Class B felonies, for which he received the advisory sentence on each. We agree with the State that "in light of the substantial benefit from the plea agreement and the evidence against him," there was "no

strategic reason to take the case to trial and risk the possibility of being convicted and sentenced on multiple Class A felonies." *Appellee's Br.* at 5. The record before us does not include facts to show an objectively reasonable probability that, but for Lamont's failure to advise him about the waiver of his right to contest his sentence on direct appeal, he would not have pleaded guilty.

[20] Affirmed.

[21] Mathias, J., and Brown, J., concur.